# BORRELLI & ASSOCIATES
## P.L.L.C.

www.employmentlawyernewyork.com

| 655 Third Avenue | 910 Franklin Avenue |
| Suite 1821 | Suite 200 |
| New York, NY 10017 | Garden City, NY 11530 |
| Tel. No. 212.679.5000 | Tel. No. 516.248.5550 |
| Fax No. 212.679.5005 | Fax No. 516.248.6027 |

July 9, 2019

*Via ECF and First-Class Mail*
The Honorable Paul E. Davison
United States Magistrate Judge for the
Southern District of New York
300 Quarropas Street
White Plains, New York 10601
Fax: (914) 390-4256

      Re:    *Carlo v. Prestige Lawns, Inc., et al.*, Case No. 7:18-cv-05578-PED

Dear Judge Davison:

      As the Court knows, we represent Plaintiff Alejandro Carlo ("Plaintiff") in this wage and hour action against Prestige Lawns, Inc. and Rodney Wechsler (together as "Defendants") (Defendants, with Plaintiff, as "the Parties"), for Defendants' alleged violations of, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA"). On June 11, 2019, the Parties attended an in-person settlement conference before Your Honor. While the parties did not ultimately agree to resolve this action at that conference, they made substantial progress towards doing so, and shortly thereafter, on June 18, 2019, the Parties reached a settlement in principle, which they have now reduced to a formal written agreement. The Parties' Settlement Agreement ("Agreement") is attached hereto as **Exhibit A**. We write now, on behalf of the Parties, to explain the terms of the Parties' settlement with respect to Plaintiff's FLSA claims, and to seek approval of their settlement of those claims in accordance with *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]

---

[1] Plaintiff also brings claims in this case for Defendants' alleged violations of the New York Labor Law ("NYLL"), which while resolved as part of the Parties' Agreement, do not require court approval for dismissal under *Cheeks*. *Simono v. Gemco Realty II, LLC*, No. 1:16-cv-05385 (AJN), ECF # 32 at 2 n.1 (S.D.N.Y. Oct. 23, 2017) (citing *Abrar v. 7-Eleven*, 2016 WL 1465360 (E.D.N.Y. Apr. 14, 2016)); *see also Greggio v. Premier Cardiology Consultants, PLLC, et al.*, No. 2:16-cv-05880 (JMA) (SIL), ECF No. 36 (E.D.N.Y. Feb. 23, 2018) (noting that courts "have regularly approved of the practice whereby parties submit their FLSA-related agreement to the Court for approval, and settle plaintiff's other claims, including under the NYLL, by private agreement.").

**I.     Procedural History and Settlement Agreement Terms**

On June 20, 2018, Plaintiff filed this action and his consent-to-join form under 29 U.S.C. § 216(b). ECF #s 1, 4.  Plaintiff alleged, on behalf of himself and all others similarly-situated pursuant to that same statute, that he worked for Defendants - - a Rockland-based landscaping company and its owner and day-to-day manager - - from 2000 until in or around June 2017. Plaintiff alleged that despite working over forty hours per week for virtually all workweeks, Defendants failed to pay him overtime compensation at the rate of one and one-half his regular rate of pay, and instead paid him a flat weekly salary throughout the FLSA limitations period, which did not change regardless of how many hours he worked each week.  Defendants answered the Complaint on September 25, 2018 (ECF # 14), denying in sum and substance all of Plaintiff's material allegations.  The Parties appeared before Judge Karas for an initial conference on February 13, 2019, and thereafter appeared before Your Honor, telephonically, on April 1, 2019. The Parties then engaged in paper discovery, which led Plaintiff to prepare a detailed damages calculation analyzing each and every week that Plaintiff worked based on both Plaintiff's recollection and Defendants' alleged records of Plaintiff's hours worked for those weeks. Following this exchange, the Parties agreed to participate in a settlement conference in an effort to resolve this matter before taking depositions or engaging in motion practice to conditionally certify a FLSA § 216(b) collective.  As the Court knows from presiding over the settlement conference, at it, the parties made substantial progress towards a resolution - - nearly agreeing in principle on an overall settlement amount - - but chose to adjourn the conference to further negotiate the other terms and conditions of a prospective agreement, most notably with respect to the timing of payment.  One week after the conference, the Parties agreed to all material terms, reaching a resolution for a total sum of $50,000.00 (hereinafter the "Settlement Sum").

The Settlement Sum will be distributed as follows:

- <u>Plaintiff</u>. The net amount of $32,115.09 (after deduction of attorneys' fees and litigation expenses) to Plaintiff;

*and*

- <u>Borrelli & Associates, P.L.LC.</u> $17,884.91 for their attorneys' fees and costs, comprising $1,827.37 as out-of-pocket litigation expenses and $16,057.54, or 1/3rd of the *net* Settlement Sum (i.e., after reduction of litigation expenses *before* calculating the 1/3rd sum) as attorneys' fees.

Defendants are to pay $40,000.00 of the Settlement Sum within forty-five days of this Court's approval of the settlement, and the remaining $10,000.00 to be paid out in four equal monthly installments of $2,500.00 each commencing thirty days after the first payment is made. Should Defendants fail to timely make any payment and thereafter fail to cure their default within

seven days after receiving notice of their breach, Defendants will be liable for 150% of any remaining unpaid balance of the Settlement Sum at the time of the uncured breach, plus reasonable attorneys' fees and costs.

As discussed at great length over the course of the June 11th settlement conference before Your Honor, and as described below, Plaintiff, on behalf of all Parties, respectfully submits that this amount and allocation is fair and reasonable under the circumstances.[2]

## II.   The Agreement is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Arrango v. Scotts Co., LLC*, 2019 WL 117466, at *2 (S.D.N.Y. Jan. 7, 2019) (Karas, *J.*). The Parties submit that their settlement of Plaintiff's FLSA claims is fair and reasonable based on the *Wolinsky* factors.

### A.   *Range of Possible Recovery*

Here, as this Court knows, Plaintiff alleges that he worked for the Defendants as a non-managerial landscaper from 2000 through June 2017. With respect to the FLSA, Plaintiff claims that during the maximum three-year FLSA period of June 21, 2015 to July 23, 2017, *see* 29 U.S.C. § 255(a), despite working upwards of sixty hours each week, Defendants failed to pay him overtime compensation for all of his overtime hours, and instead paid him a flat salary of $700.00 per week.

---

[2] On June 19, 2019, the Parties consented to Your Honor's jurisdiction for all purposes, including to enforce the terms and conditions of the Parties' Settlement Agreement in the event of any party's breach. ECF # 36.

Defendants strenuously opposed the scope and breadth of Plaintiff's claims in this matter. Defendants first argued that Plaintiff was an exempt manager for the vast majority of time he worked for Defendants, in that Plaintiff had complete discretion to, and in fact did, hire and fire various laborers on a day-to-day basis, and that Plaintiff further set their hours, pay, and determined their job responsibilities. Plaintiff claims, for his part, that even if he did these things - - landscaping - - and not managing, was his primary duty. Defendants further argued that even if Plaintiff were *not* exempt for any period, he worked far fewer hours than he alleged, as Defendants' own time records purport to reflect fewer hours worked than Plaintiff claimed that he remembered working. As a result, according to Defendants, liability, if any, would be limited to a small handful of hours for a small fraction of Plaintiff's employment. If true, Defendants' contention may ultimately reduce the Plaintiff's damages to a tiny fraction of that originally claimed, or zero if Defendants prevailed on their exemption argument. Defendants further argued that they acted in good faith in relying on the exemption, which could eliminate any liquidated damages recovery and further serve to reduce the relevant FLSA statute of limitations from three years to two.

Were the trier of fact to credit all of Plaintiff's allegations, Plaintiff's maximum recovery for his FLSA claims would be $42,900.00 for alleged unpaid overtime, plus liquidated damages in an equal amount. Of course, if Defendants successfully prevailed on their exemption defense, Plaintiff would be entitled to no damages. And if Defendants prevailed on their exemption argument as to the years prior to his conversion to a salaried employee, but not as to all years listed above, Plaintiff would only be eligible to recover, at most, $7,827.83 in overtime damages during the FLSA period, potentially doubling this amount as liquidated damages. Thus, a realistic range of recovery for Plaintiff's FLSA claims in this matter was between $85,800.00 and zero. Based on his distribution under the Parties' Agreement, after deduction of attorneys' fees and costs, Plaintiff is receiving $32,142.55, representing approximately 37% of his best-case-scenario recovery under the FLSA. On balance, considering the extensive disputed issues of fact, particularly with respect to Defendants' exemption argument, the outcome here is highly reasonable.

### B. *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, litigation expenses were prepared to substantially increase, as all Parties' depositions were to imminently commence. Conditional certification and dispositive motion practice also were to follow, with the need for a trial on the merits for most of the claims in this case virtually guaranteed given the Parties' hotly disputed issues of material fact.

At bottom, even if successful at both the summary judgment and trial stages, Plaintiff faced a difficult challenge in recovering a greater judgment than the Settlement Sum, given the substantial relief received here. While Plaintiff contends that he is owed more than the Settlement

4

Sum, Plaintiff understands that if he were to continue with the litigation - - even if successful - - he may never receive more money than what Defendants are now offering.  Worse, Defendants claimed that they would be unable to withstand a larger judgment - - even if Plaintiff prevailed at trial and recovered more - - raising the risk of a potential unenforceable judgment and then a potential bankruptcy filing.  Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff." *Flores v. Mama Lombardi's of Holdbrook, Inc.*, 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015).  With litigation expenses only expected to rise for all Parties, the Settlement Sum is especially fair and reasonable.

### C. *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place over several weeks in advance of the Parties' settlement conference, and concluded only after substantial paper discovery was exchanged and after the Parties participated in an in-person settlement conference that this Court supervised, at which they agreed to nearly all material terms.  There was no fraud or collusion here.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it.  For instance, Plaintiff's release in the Settlement Agreement is limited to any wage and hour claims that Plaintiff has or may have had against Defendants and its principals, and does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks,* 796 F.3d at 206); *Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing *Cheeks,* 796 F.3d at 206); *Flood v. Carlson Restaurants Inc.*, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015); *Lopez v. Nights of Cabiria, LLC*, 2015 WL 1455689, at *6-7 (S.D.N.Y. March 30, 2015).  Likewise, the agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood*, 2015 WL 4111668, at *1 (citing *Lopez*, 2015 WL 1455689, at *5); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks,* 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); *with Gonzalez*, 2015 WL 6550560, at *3 (citing *Cheeks,* 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

***D. The Requested Attorneys' Fees and Costs are Reasonable.***

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiff's counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $16,057.54, limited to one-third of the total net settlement amount, calculated after deducting for expenses. Courts in this Circuit routinely approve attorneys' fees awards at a rate of one-third of the total settlement. *See Fresno Cnty. Employees' Ret. Ass'n v. Isaacson/Weaver Family Trust*, 2019 WL 2219680, at *5 (2d Cir. May 23, 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) (stating that "we have previously noted that 'the percentage method has the advantage of aligning the interests of plaintiffs and their attorneys more fully'"); *see also Cregg v. Firstservice Residential N.Y., Inc.,* Case No. 15-cv-3876-LB, Dkt. No. 14 at *4-5 (E.D.N.Y. Dec. 9, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Additionally, the reasonableness of Plaintiff's counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno Cnty. Employees' Ret. Ass'n*, 2019 WL 2219680, at *6 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). As of June 28, 2019 - - prior to finalizing this motion - - Plaintiff's counsel has billed over 133.6 hours on this matter - - an adversarial litigated case wherein the parties: engaged in substantial discovery that included the exchange and analysis of dozens of pages of time records and documents; meticulously calculated Plaintiff's estimated damages on a week-by-week basis; appeared before this Court on multiple occasions, including an in-person settlement conference; and had extensive correspondence and discussions between and among the Parties on a multitude of issues - - amounting to $24,616.25 in fees if calculated pursuant to the lodestar (as of the time of this drafting), an amount representing approximately a 0.35 lodestar reduction with respect to the $16,057.54 contingency fee that counsel seeks. This figure is based on hourly rates of: $400.00 per hour for Michael J. Borrelli, Esq., Plaintiff's counsel's firm's

managing partner; $350.00 per hour for Alexander T. Coleman, Esq., the firm's partner who supervised all associate work in this case; $275.00 per hour for Michael R. Minkoff, Esq., undersigned counsel and lead associate on this matter who took over day-to-day responsibilities effective June 19, 2018; $225.00 per hour for prior lead counsel, Taylor M. Ferris, Esq., undersigned counsel's predecessor handling this matter on a day-to-day basis; $200.00 per hour for non-appearing junior associates who assisted undersigned counsel on this matter; and $90.00 to $125.00 per hour for law clerks and paralegals. Courts routinely approve these rates in similar cases. *See, e.g. Perez v. Merrick Deli & Grocery, Inc. et al.*, 13-cv-5166-ILG-JO, Dkt. No. 60 (E.D.N.Y. Apr. 4, 2019) (on a contested attorneys' fees motion filed after trial in a wage and hour case, awarding Borrelli & Associates, P.L.L.C. attorneys' fees at the rates that they request here, and recognizing that that "this Court and the neighboring Southern District of New York have routinely approved these billing rates for Borrelli & Associates"); *see also Argudo v. Maletona Corp. d/b/a Fino Ristorante Italiano et al.,* Docket No. 1:18-cv-06017-ER, D.E. 15, 16 (S.D.N.Y. Apr. 18, 2019) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 for Mr. Coleman, $295.00 for lead associate attorney on the matter, and $200.00 for junior associates); *Urquilla v. Joseph Sofield City-Scape, Inc., et al.*, Docket No.: 2:17-cv-02595 (AKT), D.E. 25 (E.D.N.Y. July 17, 2018) (approving rates of $400.00 per hour for Mr. Borrelli, $350.00 for Mr. Coleman, $275.00 for the lead associate attorney, and $200.00 to $250.00 for other associates depending on their experience); *Vivaldo v. United Talmudical Academy of Kiryas Joel, Inc.*, 14-cv-2636-GWG, Dkt. No. 128 (S.D.N.Y. Feb. 9, 2018) (approving rates of $400.00 per hour for Michael J. Borrelli, $350.00 per hour for Alexander T. Coleman, $295.00 per hour for a senior associate, and $90.00 per hour for the Firm's paralegals). Plaintiff's counsel's contemporaneously-kept billing records are attached hereto as **Exhibit B**.

Finally, with respect to costs, Plaintiff's counsel has incurred $1,827.37 in out-of-pocket expenses prosecuting this case, consisting of the Court's filing fee, postage and copying, PACER fees, private investigation costs, travel expenses, legal research, and service of process fees.[3] Plaintiff's counsel's itemized expense report is attached here as **Exhibit C**.

Accordingly, Plaintiff's counsel's request for a total of $17,884.91 as compensation for their work and expenses in this matter is entirely reasonable.

---

[3] Prior to filing suit, Plaintiff hired a private investigator to conduct a background search for information relating to the Defendants' business operations, including their gross dollar volume of business for the purpose of establishing enterprise coverage under the FLSA, and to attempt to locate potential witnesses who also previously worked for Defendants. This amounted to $1,141.32 in out-of-pocket expenses. Courts have found an investigator's expenses incurred, when "incidental and necessary" to the litigation, taxable as costs that a prevailing party can recover. *See, e.g., Kingvision Pay-Per-View, Ltd. v. Tardes Calenas Rest.*, 2005 WL 4850311, at *6 (E.D.N.Y. Nov. 29, 2005) ("I recommend that the court award plaintiff the expenses it incurred for the investigator since the investigation clearly was 'incidental and necessary' to the prosecution of this case."); *Perez v. Manhattan Jeep Eagle*, 1997 WL 458787, at *3 (S.D.N.Y. Aug. 11, 1997) ("I find that attempting to locate a key witness, albeit unsuccessfully, is necessary to the litigation and thus will not reduce the award of costs by this expenditure.")

**III.     Conclusion**

For the forgoing reasons, Plaintiff, on behalf of the Parties, respectfully requests that the Court approve the settlement of Plaintiff's FLSA claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, but retain jurisdiction to enforce the terms of the Parties' Agreement.  The Parties have attached a proposed order of dismissal as an exhibit to the Parties' Agreement for the Court's convenience.

We thank the Court for its time and attention to this matter.

<div style="text-align:right">
Respectfully submitted,

_____
Michael R. Minkoff, Esq.
*For the Firm*
</div>

Copies to:    Counsel for Defendants (via ECF)

Enclosure